Herbert H. Lucke and Susan Lucke v. Commissioner.
Lucke v. Commissioner
Docket No. 70180.
United States Tax Court
T.C. Memo 1959-141; 1959 Tax Ct. Memo LEXIS 112; 18 T.C.M. (CCH) 625; T.C.M. (RIA) 59141; June 30, 1959
*112 Held: Amounts of unreported tips received by petitioner determined. Grant G. Calhoun, Esq., 1017 Macdonald Ave., Richmond, Calif., for the petitioners. Nat F. Richardson, Esq., and Clyde R. Maxwell, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for the years 1954 and 1955 in the amounts of $334.56 and $272.91, respectively. The question to be decided is the amount of tips received in each year. Findings of Fact Herbert H. and Susan Lucke are residents of Reno, Nevada. They filed joint income tax returns for the years 1954 and 1955 with the director of internal revenue for the district of Nevada. The issue relates only to Herbert H. Lucke, and he is referred to herein as the petitioner. Petitioner was employed during the taxable years as a waiter or a counterman by hotels and restaurants in Reno. He reported as the tips received $550 in each year. He received wages from hotels and restaurants in the amounts listed below: 1954
Wages
Employer
Received
Mapes Hotel
$ 235.00
Riverside Hotel
1,715.24
Harold's Club Cafeteria
117.00
The Christmas Tree
214.50
Total wages
$2,281.74
Tips reported
550.00
Total income reported
$2,831.74
1955
The Christmas Tree
$ 351.00
The Big Hat
364.00
Mapes Hotel
1,221.50
Total wages
$1,936.50
Tips reported
550.00
Total income reported
$2,486.50
*113 Respondent determined that in 1954 and 1955 petitioner received tips in amounts equal to his wages; that he received tips of $2,281 for 1954, and failed to report $1,731; that he received tips of $1,936 for 1955, and failed to report $1,386. Petitioner did not keep any record of the amount of tips received in the taxable years, or of the number of days and weeks worked in each year, or of the length of time he worked at various jobs, or of the number of days he was unemployed, or of his expenditures. The amounts of tips which he reported in his returns, $550 for each year, were estimates. Petitioner is a member of the Culinary and Hotel Service Union. Petitioner received, during 1955, a non-taxable disability pension in the total amount of $396. During 1954, petitioner was employed as a waiter, first by the Mapes Hotel and then by the Riverside Hotel until June. He was next employed as a counterman in the cafeteria at Harold's Gun Club. From July until November he was re-employed as a waiter at the Mapes Hotel. During the winter of 1954 he worked at a restaurant called The Xmas Tree, where he substituted for absentee waiters. During the winter he worked 3 or 4 days a week on a single *114 shift, and he did not work overtime. While he was employed as a cafeteria counterman, he did not receive tips. He was unemployed during part of 1954. During 1955, petitioner's employment was as follows: During January and February he was employed as a waiter at the Xmas Tree restaurant. He then worked for a short time at the Big Hat restaurant. He returned to the Mapes Hotel thereafter where he was a waiter in the Sky Room during the late spring, in the summer season and until December. In December he had a heart condition and his work was restricted to 3 hours per day during the lunch shift. He was unemployed during part of 1955. The Mapes and Riverside Hotels are the leading hotels in Reno. Each operates a theatre-type dining room where floor shows are presented. Such dining room at the Mapes is called the Sky Room, and at the Riverside it is called the Theatre Restaurant. These dining rooms were open every night during the year 1954 and 1955. Both rooms opened at 5 or 6 p.m. and closed at 2 a.m. The charges for meals in the Sky Room were from $2.75 to $5.50, and in the Theatre Restaurant they were from $3.50 to $6.50. The minimum charges in these dining rooms were $2 and $3.50, *115 respectively. There are 82 tables in the Theatre Restaurant and when that room is fully occupied a team of 2 waiters serves 36 people. In both the Sky Room and the Theatre Restaurant waiters work in a team of two waiters and they are assisted by one bus boy. The team of waiters pool their tips, they give 15 per cent to the bus boy, and they retain 85 per cent. In both dining rooms waiters are rotated to different sections each evening so that all have the opportunity to be stationed at some time at the best tables close to the floor show. Petitioner worked in the Sky Room when he was employed at the Mapes, and in the Theatre Restaurant when he was employed at the Riverside. He occasionally served at banquets on a 3-hour shift. Waiters who serve banquets share the 85 per cent of the entire charge made by the hotel for tips which was 10 per cent of the whole bill, which was added to the bill, and the bus boys received 15 per cent. Under the union agreement in 1954 and 1955, waiters were paid by the Mapes and Riverside hotels $6.50 for an 8-hour day, and received meals; $5.20 for a 6-hour shift; and $3.95 for a 4-hour shift. They were paid $1.35 per hour for serving at banquets on a 3-hour *116 shift. The normal workday and workweek were 8 hours and 6 days, respectively. The rate of pay for overtime was time and one-half. In Reno the hotel and restaurant business is seasonal. The best season is during July, August, and September. The Mapes and Riverside hotels employ more waiters during that season, and then waiters work a full week and, often, overtime. During the winter months, November through February, business is slack, the weekends are the best days, and waiters usually work only 3 or 4 days a week. In March, April, May, and October business is fair but not as good as in the summer season. During the winter months waiters were often excused before the end of a shift. Petitioner received tips in the total amount of $1,550 in 1954, and he failed to report $1,000. He received tips in the total amount of $1,350 in 1955, and he failed to report $800. Opinion Tips are part of compensation for services, therefore, taxable income under section 22(a), 1939 Code, as petitioner admits. , affirming ; Regs. 111, sec. 29.22(a)-2. The question for decision is whether the amount of tips received by petitioner in each taxable year *117 is a larger amount than was reported. The respondent has determined that petitioner received a specific amount of tips. His determination is presumptively correct under law and petitioner has the burden of proving that each amount for tips actually received is not correct. ; ; ; 9 Mertens, The Law of Federal Income Taxation [Zimet Revision), sec. 50.61. If the petitioner fails to meet his burden of proof by presenting competent proof of the amounts of tips received, the respondent's determinations of the amounts must be sustained. Although the question is one of fact, it is of widespread interest both to the Commissioner and to taxpayers who receive tips as part of compensation for services [1] of which there are well over 100,000. This case is before this Court because the taxpayer did not keep any records of the amounts of tips received, or any other records which might be helpful in determining with a reasonable amount of accuracy the amounts of tips received, such as records of the hours of shifts worked; when the shifts were, during either the day or the evening; *118 the number of days of employment during various seasons of the year; and the number of days and seasons of unemployment. But every taxpayer is required by law to report in his income tax return, fully and honestly, every item of gross income received, and must maintain adequate records of some kind which will show to him and to the Commissioner the amount of income of all types received in each year. [2] If a taxpayer does not keep any records to show the full amount of every kind of income received in a taxable year, or if such records as are kept do not clearly show the entire income, the Commissioner is authorized to make a computation of the amount of income in accordance with such method as in his opinion does clearly show the full amount of income received. [3] *120 As we said in , affd. , certiorari *119 denied : "The Commissioner need not accept, as complete, correct, and accurate, the returns filed or the sworn statement of the taxpayer that his returns completely and correctly disclose his tax liability. The Commissioner has authority to check the returns against the records of the taxpayer and, if no records have been kept or if the records are incomplete, inaccurate, or otherwise unsatisfactory, he may seek information elsewhere to discover, assess, and collect the full tax liability imposed by law." See, also, , affd. . In failing to keep records of his tips for each year, the petitioner failed to comply with legal requirements. The respondent, being unable to verify the amounts of tips reported, was authorized to make a conputation of the amount of petitioner's tips in each year in accordance with a method which in his opinion showed the entire amount thereof. Petitioner contends that he did not receive tips of more than $550 each year. He testified that he was not employed during all of the working days of each year, that his tips were much lower during the winter and spring months than during July, August, and September, and that he gave 15 per cent of his tips to bus boys. However, petitioner did not state any specific amounts for tips received per day during the busy season when he worked every day and overtime. Petitioner cannot fully discharge his burden of proof by making estimates of the average amounts of his tips. The amounts he reported in his returns were only estimates. If we were to accept petitioner's testimony which again represents estimates, we would not recognize that respondent's determinations are prima facie correct, as we *121 must do. On the other hand, we accept as true petitioner's testimony that he was unemployed part of each year; that he was ill during December 1955; that he worked only part time during the winter and spring months; that he gave 15 per cent of his tips to bus boys; and that the total amount of his tips was much lower during the months when business was slack than it was during the busy season. Petitioner has failed to wholly meet his burden of proof. We are unable to believe that his tips amounted to only $550 in each of the taxable years. Furthermore, in much of his testimony, he was evasive. Therefore, for failure of proof, part of the respondent's determinations is sustained. Petitioner has failed in his burden of proof, in part, because he did not keep any written records of his tips. Since he was extremely negligent in not keeping records, he must bear the tax consequences of his own negligence. In the future, he should make daily records of the full amount of tips received, and he should retain such written records to inform himself of the full amount of tips received for the purpose of making an honest and accurate report of the amount of income from tips in income tax returns. *122 Upon the entire record it is found and held that petitioner received in each year at least the total amounts of tips stated in the Findings of Fact, and that he failed to report tips in the amounts of $1,000 for 1954 and $800 for 1955. Decision will be entered under Rule 50. Footnotes
1. According to recent reports of the United States Bureau of the Census, in 1950 there were the following number of waiters and taxicab drivers in the United States: ↩
Waiters, bartenders, count-
er workers and all serv-
ice workers except house-
hold
Male
136,465
Female
134,885
271,350
Taxi-drivers and chauf-
feurs
Male
76,599
Female
none stated
76,599
347,949
2. See sections 41 and 54 of the 1939 Code, sections 446 and 6001 of the 1954 Code, and the regulations thereunder. ↩
3. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *↩